GUIDRY, Judge.
Defendant, Carl Huntley, was indicted by the Vermilion Parish Grand Jury for the first degree murder of Andrew Evans, a violation of La.R.S. 14:30. Subsequently, the State amended the charge against defendant to second degree murder, a violation of La.R.S. 14:30.1. Defendant was tried by a jury and found guilty as charged. The trial court then imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Defendant appeals from his conviction and makes the following assignments of error [1].
1. The trial court erred in denying defendant’s motion for a change of venue.
2. The trial court erred in allowing the testimony of, or in the alternative, improperly instructing the jury on the credibility to be accorded the testimony of Walter Mitchell, Jr.
3. The trial court erred in allowing the testimony of, or in the alternative, improperly instructing the jury on the weight to be given to the testimony of Dr. Glenn Larkin.
*44 FACTS
On the evening of October 5, 1982, Andrew Evans and defendant, Carl Huntley, struck up a conversation while drinking at the Stacker’s Club in Abbeville. Evans, who had been drinking heavily and displaying a large amount of cash, suggested to Huntley that they proceed to another nightclub located across town. Huntley agreed and the two left. As they walked to Evans’ jeep parked near the Stacker’s Club, they were joined by Exalton Guidry, Huntley’s half-brother, and Walter Mitchell, Jr. The four departed in Evans’ jeep.
Evans, the driver, upon stopping his vehicle at the intersection of Duthile and Gaudchaux streets in observance of a stop sign, was struck in the head by Huntley, who was seated directly behind Evans. Huntley continued to hit Evans, knocking him from the jeep. Huntley then struck Evans with a hard object and proceeded to strangle Evans with his bare hands. Evans died as a result of strangulation.
Thereafter, Huntley placed Evans’ body back into the jeep and drove to an empty field off of South Guyon Street in Abbe-ville. Huntley then walked back to the Stacker’s Club where he met with Exalton Guidry and the two drove off. The extent of participation by Guidry and Mitchell in the recited events is not made clear. According to Mitchell, he left the scene as soon as Huntley began hitting Evans. It appears that Guidry left the scene sometime later.
The following morning Andrew Evans’ body was found by a passerby. While investigating the scene, police officers found the contents of Evans’ wallet, other than money, strewn along the intersection. The wallet and money were not found. An autopsy conducted on Evans’ body revealed a blood alcohol level of .28%.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant argues that the trial court erred in denying his motion for a change of venue. Defendant asserted in his motion, and now argues on appeal, that because of his close blood relationship to two individuals who lived in the same city who were convicted of the murders of respected members of the community, there existed a prejudice in the public mind of such a nature that he could not receive a fair and impartial trial in Vermilion Parish.
Specifically, defendant makes the following allegations in support of his position:
1. Two of his brothers were convicted of first and second degree murder respectively and that the victims were highly respected members of the community in which they lived;
2. Defendant’s brother was granted a change of venue for his trial upon citing the conviction of the older brother; and,
3. Defendant’s half-brother was, murdered but no witnesses were found who could identify the murderer or testify against the murderer, because the community so regarded this family in the lowest esteem.
La.C.Cr.P. Art. 622 provides:
“A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.”
In State v. Daigle, 440 So.2d 230 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 123 (La.1984), we stated:
Under this article, the defendant must prove more than mere public knowledge of facts surrounding the offense to be entitled to have his trial moved to another parish. The burden of proof is on the defendant to show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. State v. Watson, 423 So.2d 1130 (La. *45 1982); State v. Vaccaro, 411 So.2d 415 (La.1982). Whether defendant has made the requisite showing is a question addressed to the trial court’s sound discretion'which will not be disturbed on review in the absence of an affirmative showing of error and abuse of discretion. State v. Vaccaro, supra; State v. Adams, 394 So.2d 1204 (La.1981).
An examination of the testimony at the hearing on the motion for a change of venue, and of the prospective jurors on voir dire demonstrates that there was not a great deal of publicity surrounding this murder; the publicity which was circulated took place at the time of the crime only, which was about a year before trial; that no prejudice existed in the collective mind of the community; and, defendant’s jury was composed of fair and impartial jurors who did not have any preconceived notions about defendant’s guilt or innocence or knowledge of defendant’s family.
Consequently, defendant has failed to demonstrate any abuse of discretion in the trial court’s denial of the motion for change of venue. This assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 3
Through these assignments of error, defendant alleges that the trial court erred in instructing the jury on the credibility to be accorded the testimony of Walter Mitchell, Jr., and in improperly instructing the jury on the weight to be given the testimony of Dr. Glenn Larkin.
The record reflects that defendant did not object to the jury instructions as given by the trial court. After charging the jury, the following colloquy took place between the trial judge and counsel for the State and the defendant:
“Gentlemen, Mr. District Attorney or Mr. Counsel for the Defense, previous to giving these instructions the Court has gone over with each counsel, the proposed instructions and has furnished each of you a copy thereof. Do any of you have any objection to any of the instructions given?
BY MR. GARROT:
The State does not, Your Honor.
BY THE COURT:
Does the Defense?
BY MR. WOODERSON:
The Defense does not, Your Honor.
BY THE COURT:
Do either one desire any implementation of the instructions given?
BY MR. GARROT:
No, Your Honor.
BY MR. WOODERSON:
No, Your Honor.”
In the absence of a contemporaneous objection, an alleged error in the jury instructions is not preserved for appeal. State v. Haarala, 398 So.2d 1093 (La.1981). Consequently, defendant cannot complain of an alleged error in the jury instructions given by the trial court. Furthermore, our review of the jury instructions given by the trial court demonstrates that they were completely in accord with the law.
Defendant also argues through these assignments of error that the trial court erred in allowing the testimony of Walter Mitchell, Jr. into evidence and the testimony of Dr. Glenn Larkin wherein he speculated on the cause of the patterned abrasion found on the victim’s head.
Defendant contends that because Mitchell was “involved” in the alleged offense, and because of his past criminal record, he should not have been allowed to testify as he was not a credible witness. Whether or not Mitchell proved to be a credible witness, however, has no bearing on the admissibility of his testimony. Mitchell was an eyewitness to the incident. The jury was made well aware of Mitchell’s involvement in the alleged offense and of his past criminal history. The trial court instructed the jury as follows concerning their role in determining the credibility of witnesses:
“As jurors, you alone shall determine the weight and credibility of the evidence. As the sole judges of the credibility of witnesses and of the weight that their *46 testimony deserves, you should scrutinize carefully the testimony given and the circumstances under which the witness has testified." In evaluating the testimony of a witness, you may consider his or her ability and opportunity to observe and remember the matter about which he or she testified, his or her manner while testifying, any reason that he or she may have for testifying in favor of or against the State or the Defendant, and the extent to which the testimony is supported or contradicted by other evidence. ...
The testimony of a witness may be discredited by showing that the witness will benefit in some way by the defendant’s conviction or acquittal, that "the witness is prejudiced or that the witness may have any other reason or motive for not telling the truth. The testimony of a witness may be discredited by a showing that the witness made a prior statement which is inconsistent with his present testimony. Prior contradictory statements are admitted only to attempt to discredit the witness, not to show that the contradictory statements are true. The testimony of a witness may be discredited by showing that previously, the witness has been convicted of a crime. The conviction does not necessarily mean that the witness is not telling the truth. It is a circumstance you may consider, along with all other evidence, in deciding whether you believe any or all of the testimony of a witness.”
It was clearly for the jury, as trier of fact, to assess the weight and credibility of Mitchell’s testimony. State v. Klar, 400 So.2d 610 (La.1981). Thus, it was entirely proper for the trial court to have admitted Mitchell’s testimony into evidence.
Defendant also argues that the trial court improperly allowed the testimony of Dr. Larkin as to his speculation concerning the “patterned abrasion” on the victim’s head. The record reflects that Dr. Larkin could not conclusively testify as to what instrument caused the abrasion. The jury was not misled as to the doctor’s certainty concerning this testimony and the jury was clearly instructed as to its role in assessing the weight and credibility to be accorded all witnesses’ testimony. Moreover, as this testimony had little to do with the-actual cause of death, it is difficult to discern how such testimony prejudiced defendant. Defendant makes no showing, nor does he allege, that such testimony was prejudicial.
For the reasons stated above, these assignments of error are without merit. Accordingly, defendant’s conviction and the sentence imposed are affirmed.
AFFIRMED.

. In his brief, defendant designates a fourth assignment of error. However, this assignment of error was not perfected in the trial court as required by La.C.Cr.P. Art. 844. Therefore, it will not be addressed. See also, La.C.Cr.P. Art. 920(1).